UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-10122 |
| | ) | |
| ISRAEL ISBELL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

This matter is now before the Court on Defendant Israel Isbell's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). (D. 107). For the reasons stated below, his Motion is DENIED.

**BACKGROUND & PROCEDURAL HISTORY**

On December 16, 2009, Defendant was charged in a superseding indictment with the offense of receipt of child pornography, in violation of 18 U.S.C. § §2252A(a)(2)(A) and (b)(1), and possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(1). (D. 19). On March 5, 2010, Defendant pled guilty to count one. (d/e 3/5/2010). On July 2, 2010, this Court sentenced him to 180 months of imprisonment and a lifetime term of supervised release. (D. 43).

Defendant filed his first *pro se* Motion for Compassionate Release on May 22, 2020, and defense counsel filed an Amended Motion on June 16, 2020. (D. 85; D. 89). This Court denied compassionate release because Defendant failed to establish extraordinary and compelling reasons for release. (d/e 7/13/2020). Defendant appealed, and the Seventh Circuit affirmed this Court's ruling. *United States v. Isbell*, 848 Fed.Appx. 669 (Mem) (7th Cir. 2021).

On July 9, 2021, Defendant filed his second *pro se* Motion for Compassionate Release. (D. 107). The Court appointed the Federal Public Defender to represent him. (d/e 7/9/2021). On July 16, 2021, defense counsel filed a Notice of Intent Not to File an Amended Motion for Compassionate Release, stating that due to the procedural posture of this case and the thoroughness of Defendant's *pro se* Motion, it was unnecessary to file an amended motion. (D. 109, p. 2). On July 28, 2021, the Government filed a Response in opposition to compassionate release. (D. 111). Defense counsel filed a Reply on August 13, 2021. (D. 113). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his or her behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Seventh Circuit provided further instruction regarding the proper analysis when evaluating a motion for a discretionary sentencing reduction under § 3582(c)(1)(A) based on "extraordinary and compelling" reasons, which includes two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

> At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction…. Upon a finding that the prisoner has supplied

such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*Id.* The Seventh Circuit has also held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. *United States v. Gunn,* 980 F.3d 1178, 1180 (7th Cir. 2020). This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id.* at 1181.

## DISCUSSION

Defendant argues that compassionate release is warranted because he contracted COVID-19 twice and suffered from "COVID TOE"; he endured a year of harsh conditions, including 24-hour lockdowns; he might have pre-hypertension or hypertension; and the United States no longer has jurisdiction to enforce its judgment against him. (D. 107). The Government urges the Court to deny his Motion because Defendant failed to present an extraordinary and compelling reason for release and the section 3553(a) sentencing factors do not support a reduced sentence. (D. 111). In his Reply, defense counsel argues that the Government mischaracterized Defendant's release plan and claims the Delta variant poses a "significant danger" to Defendant even though he is fully vaccinated. (D. 113).

### I. Exhaustion of Administrative Remedies

Defendant filed requests for compassionate request with the warden on February 27, 2021 and June 10, 2021. (D. 107, pp. 32-33). The warden did not respond. (D. 111, p. 11). The Government concedes that Defendant exhausted his administrative remedies. *Id.* The Court finds the exhaustion requirements have been met and will address this matter on the merits.

## II. Defendant Fails to Establish an Extraordinary and Compelling Reason for Release

### A. Defendant's Jurisdictional Argument

Defendant argues that this Court no longer has jurisdiction to enforce its judgment against him after he was transferred to Illinois. (D. 107, p. 6). He states that "while [he] was actually confined and serving a federal sentence, a sentence that was not only primary, but consecutive, the United States 'pardoned' him when it transferred him to Illinois custody to serve his unrelated state sentence with nothing more than a detainer lodged against his federal sentence." *Id*. at 19. He claims that this loss of jurisdiction constitutes an "extraordinary and compelling" reason for release. *Id*. at 15.

This Court has jurisdiction to enforce Defendant's sentence and the authority to rule on his Motion for Compassionate Release. Defendant entered into a blind plea to count one of the superseding indictment and executed a written waiver of his right to appeal and bring a collateral attack. (D. 26). He previously filed a Motion to Vacate, Set Aside, or Correct Sentence under 18 U.S.C. § 2255, which this Court denied. *Isbell v. United States*, 2011 WL 6091733 (C.D. Ill. Dec. 7, 2011).

Defendant also argues that the Sentencing Guidelines are no longer relevant. Based on the Seventh Circuit's decision in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), Defendant argues that 18 U.S.C. § 3553(a) controls the Court's analysis, not 18 U.S.C. § 3142(g). (D. 107, p. 12). He argues that the Court should not evaluate "whether [he] would be a 'danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)' as U.S.S.G. § 1B1.13 directs" because his Motion falls under 18 U.S.C. § 3582(c)(1)(A)(i).

Defendant is incorrect. Although this Court is not bound by the Sentencing Guidelines, U.S.S.G. § 1B1.13 remains relevant post-*Gunn*. *Gunn*, 980 F.3d at 1180. The Seventh Circuit

4

explained that the Sentencing Guidelines provide a "working definition" of "extraordinary and compelling reasons." *Id*. This Court continues to give great weight to the Sentencing Guidelines even though they are not binding.

### B.  FCI Hazelton

Defendant is currently incarcerated at Federal Correctional Institution (FCI) Hazelton in Bruceton Mills, West Virginia. (D. 110, p. 1). His expected release date is August 30, 2022. *Id*. He argues that he has endured "extremely difficult conditions that included unsafe conditions, near 24-hour a day lockdown/cell confinements." (D. 107, pp. 7, 9-11).

As of August 26, 2021, two inmates at FCI Hazelton currently have COVID-19. *Federal Bureau of Prisons, COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 8/26/2021). One inmate, but no staff members, died. *Id*. To date, 130 inmates and seventy-nine staff members who contracted COVID-19 have fully recovered. *Id*.

The BOP is currently administering vaccines to staff and inmates. At the Hazelton Federal Correctional Complex, which includes the FCI and the United States Penitentiary, 391 staff members and 1,991 inmates, including the Defendant, are fully vaccinated. (*Id*.; D. 107, p. 8). With cases down and vaccinations up, it appears that COVID-19 infections are waning in this facility despite new variants.

### C.  Defendant's Medical Conditions

Defendant argues that the COVID-19 pandemic and his medical conditions constitute extraordinary and compelling reasons for compassionate release. He is forty-five years old and suffers from "a litany of health issues including Acute Laryngopharyngitis, Alternating Esotropia, Cerebral Palsy, Chest Pains, Gastro-Esophageal reflux disease, Esophagitis with Bleeding, Hypermetropia, and may have pre-hypertension or Hypertension." (D. 107, pp. 23, 25).

The CDC recognizes an increased risk of severe illness from the virus due to hypertension. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 8/26/2021). However, his claim that he *might* have hypertension is based on an emergency room visit on June 4, 2021, regarding his swollen leg. (D. 107-1, pp. 39-41). According to medical records, Defendant "may have pre-hypertension or hypertension based on a blood pressure reading in the emergency department." *Id*.

Defendant tested positive for COVID-19 on May 29, 2020 and October 14, 2020. (D. 110, p. 2). He was placed in isolation and fully recovered. *Id*. Defendant claims he developed "COVID-TOE," but his medical records do not substantiate this claim. (D. 107-1, pp. 22-41). Even if he has this condition, there is no evidence that he faces a greater risk of contracting COVID-19 again. Defendant has been vaccinated for COVID-19; he received his first dose of the Pfizer-BioNTech vaccine on April 7, 2021, and the second dose on April 28, 2021. (D. 111-2, pp. 2-3).

The Court finds that Defendant has failed to demonstrate extraordinary and compelling reasons for compassionate release based on conditions at FCI Hazelton, the COVID-19 pandemic, or his medical conditions, some of which are speculative. According to the CDC, cases of reinfection are rare. *See Reinfection with COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html(last visited 8/26/2021). Defendant contracted COVID-19 and recovered and is also fully vaccinated. Other district courts have held that the virus does not present an extraordinary and compelling reason for compassionate release for a vaccinated inmate. *See, e.g., United States v. Wills*, 2021 WL 2179256, at *3-4 (D. Or. May 27, 2021) (collecting cases); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) ("Given current understanding, the Pfizer vaccine is

so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule – and certainly not extraordinary and compelling.") The Seventh Circuit has recently held that prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain compassionate release. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

Defendant's Reply describes the difficulties inmates now face due to the Delta variant, but "[t]he mere presence of COVID-19 in a particular prison (or the BOP generally) cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6. As previously stated, it does not appear that FCI Hazelton is experiencing a serious outbreak of COVID-19 and Defendant's claim that he may have pre-hypertension or hypertension is unsubstantiated.

Therefore, Defendant's Motion for Compassionate Release is DENIED.

### III. Section 3553(a) Factors Do Not Support a Sentence Reduction

Even if Defendant had established extraordinary and compelling reasons for compassionate release, a sentence reduction would be unwarranted under the section 3553(a) factors.

Prior to the instant offense, Defendant accumulated numerous criminal convictions for theft, criminal trespass, resisting an officer, possession of methamphetamine, and delivery of cocaine. (D. 35, pp. 9-13). Defendant committed the instant offense while he was on state parole. *Id*. at p. 13. On September 28, 2009, he installed a peer-to-peer file sharing program and

downloaded several videos of child pornography. *Id*. at p. 5. In total, he was responsible for the receipt of thirteen video images containing child pornography. *Id*. at p. 7.

BOP records reflect that he declined sex offender counseling. (D. 110, p. 1). He was evaluated for the Residential Drug Abuse Program (RDAP) and diagnosed with Cannabis Use Disorder and Stimulant Related (Cocaine) Severe and enrolled in the program. *Id*. On October 30, 2019, he brought a pornographic card to the unit and sold it to another inmate, which was against RDAP's rules. *Id*. He withdrew from the program on November 21, 2019. *Id*. at 2.

During his time in custody, Defendant committed disciplinary violations for being unsanitary or untidy (2012), phone abuse and giving/accepting money without authorization (2013), possession of tobacco (2016), possession of an unauthorized item (2016), refusing to obey an order (2017 and 2020), and interfering with staff (2020). *Id*. at 1.

Defendant's criminal history, the instant offense, and his conduct in prison demonstrate to the Court that he has very little respect for the law. Reducing Defendant's sentence would not reflect the seriousness of his offense, promote respect for the law, or provide adequate deterrence. Therefore, the Court finds that a sentence reduction is not supported by the section 3553(a) factors.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Compassionate Release [107] is DENIED.

ENTERED this 27th day of August, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge